**FARMERS ELEVATOR MUTUAL IN-
SURANCE COMPANY, a corpo-
ration, Plaintiff,**

v.

**CARL J. AUSTAD & SONS, INC., a cor-
poration, Tri-State Insurance Company,
a corporation, L. P. Gas Transport Com-
pany, a corporation, and Martha D. Ta-
tro, individually and as Trustee for the
North Dakota Workmen's Compensa-
tion Bureau, Defendants.**

Civ. No. 562.

United States District Court
D. North Dakota,
Southwestern Division.

Feb. 13, 1964.

———◆———

William R. Reichert, Dickinson, N. D.,
and Frederick Saefke, Jr., Bismarck, N.
D., for plaintiff.

Patrick A. Conmy, Conmy & Conmy,
Bismarck, N. D., for defendant Tri-State
Ins. Co.

Cox, Pearce, Engebretson, Murray &
Anderson, Bismarck, N. D., for defend-
ants Carl J. Austad & Sons, Inc., and L.
P. Gas Transport Co.

Reichert & Howe, Dickinson, N. D., for
defendant Martha D. Tatro.

REGISTER, Chief Judge.

This is an action for a declaratory
judgment to determine questions of lia-
bility and priority of liability of two in-

surers, arising from the death of Harry Tatro. There is no factual dispute. Jurisdiction is based upon diversity of citizenship and the requisite amount in controversy.

Defendant Carl J. Austad & Sons, Inc. (hereinafter called Austad) is a corporation engaged in the transportation of petroleum products by motor truck. Defendant Tri-State Insurance Company, a corporation, (hereinafter called Tri-State) on or about September 10, 1960, issued a policy of liability insurance to Austad as the named insured. Scranton Equity Exchange (hereinafter called Scranton) is a cooperative which owns and operates a liquified petroleum gas bulk storage plant in the city of Scranton, North Dakota. Plaintiff, Farmers Elevator Mutual Insurance Company, a corporation, (hereinafter called Farmers) at all times here involved was the liability insurer of the property of Scranton. Harry Tatro was an employee of, and driver for, Austad, at the critical time.

The following facts have been specifically stipulated: On June 8, 1961, a tractor and tank trailer combination unit, owned by Austad and driven by Harry Tatro, stopped at the facilities and property of Scranton Equity Exchange for the purpose of making a delivery of propane gas to such facilities; the truck driver, Harry Tatro, drove such unit to the bulk plant in said unloading area and hooked up the hoses used on the truck to the truck outlets and to the inlets on the pipeline system maintained by the bulk plant; the driver, Tatro, was in the process of opening a valve located on top of the storage tank, standing on a metal catwalk on the top of the tank, when an explosion occurred, the effect of which was to knock him off of the tank and set him afire. No agent or representative or employee of Scranton Equity Exchange was present at that time or participated in any manner in the unloading or in anything that was done for the purpose of the subsequent unloading; this delivery was made at approximately midnight on June 8, 1961, at which time there were no employees of Scranton Equity Exchange in or near their facilities or their buildings. It was the custom under such circumstances for the driver of the truck to make the delivery, perform everything that was necessary for the unloading, and later deliver the papers evidencing such unloading and the quantity unloaded to the manager of the plant, and that insofar as the incident here involved is concerned, the driver was acting pursuant to such custom. The complaint filed by Martha Tatro in the wrongful death action against the Scranton Equity Exchange alleges that the death of Harry Tatro was proximately caused by the negligence of the Scranton Equity Exchange in the construction and maintenance of its storage facilities.

Tatro's widow, Martha D. Tatro, sought and received benefits under the North Dakota Workmen's Compensation Act. Prior to the institution of this action Martha D. Tatro, individually and as Trustee for the North Dakota Workmen's Compensation Bureau, brought a wrongful death action against Scranton for damages resulting from the death of her husband, which action is referred to in the stipulated facts, supra.

Farmers (plaintiff), while conceding that it is the liability insurer of Scranton, tendered the defense of the Tatro action to Tri-State (Austad's insurer) on the theory that Scranton was an additional insured under the Tri-State policy. This tender of defense was refused by Tri-State, whereupon this action was brought to determine whether or not Tri-State is obligated to defend Scranton in the Tatro Action and, if Scranton is an additional insured under the policy, whether Tri-State has primary or secondary liability upon Scranton.

The Tri-State policy is a special form truck policy. Pertinent portions thereof will be quoted and considered. Under the caption or title of "INSURING AGREEMENTS" appear the following:

"I. Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay

as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile described in Item 5 of the Declarations, and only while being operated for the purposes stated and subject to the limitations in Item 6 of the Declarations."

It should be noted that the motor vehicle here involved is concededly included in Item 5 of the Declarations, and that the transportation of gasoline was one of the uses declared in Item 6 of such Declarations. One of the specific provisions of said Item 6 is: "Use of the automobile for the purposes stated includes the loading and unloading thereof."

"II. Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

"(a) defend any suit against the Insured alleging such injury, sickness, disease, or destruction and seeking damages as the result of an accident covered by this policy, even if such suit is groundless, false or fraudulent; * * *".

"III. Definition of Insured: With respect to the insurance for bodily injury liability and for property damage liability, the unqualified word "Insured" includes the named insured and also includes any person while using the automobile provided the actual use of the automobile is by the named Insured or with his permission, and used for the purposes stated and subject to the limitations in Item 6 of the declarations. The insurance with respect to any person other than the named insured does not apply:

"(a) * * *.

"(b) * * *.

"(c) to any person with respect to bodily injury to or death of any other person who is an insured."

Under "EXCLUSIONS", is the provision that:

"This policy does not apply:

(h) under coverage A, to injury to, or death of any insured under this policy;

(i) under coverages A and C, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment of the insured;

(j) under coverage A, to any obligation for which the insured or any company as his insurer may be held liable under any workmen's compensation law."

Plaintiff's contention is that it is an additional insured under the so-called Omnibus definition of insured, because the use of the vehicle included the loading and unloading thereof, and at the time of the accident here involved such vehicle was being unloaded at the bulk plant of plaintiff, with the permission of the named insured Austad, and that by reason thereof said Tri-State is obligated to undertake the defense of Scranton in the Tatro suit.

Defendant's contention is that it is not an additional insured under the policy, and, furthermore, that even if it be so considered, the policy affords plaintiff no coverage or protection because the suit for which the defense is requested is based upon the death of Tatro who was an insured, that in the definition of insured the policy specifically recites that coverage does not apply if the suit is based upon the death of any other person who is an insured under the policy, and that exclusions (h), (i) and (j) are also applicable. Defendant further calls attention to the fact that the wrongful death action is based solely upon the alleged negligence of Scranton in the maintenance of its tanks as being the

proximate cause of the death of her husband.

As plaintiff contends, there is no question but that the use of the vehicle involved (i. e. that Tatro was in the process of unloading it at the time of the accident) was within the coverage provisions of the policy of Tri-State, and that the said use was with the permission of the named insured, Austad. Accordingly it may properly be said that Tatro was, under the circumstances, an additional insured. " * * * the omnibus coverage clause makes an additional insured of an employee operating the car * * *." Lumber Mutual Casualty Insurance Company of N. Y. v. Stukes, et al., 1947, 4 Cir., 164 F.2d 571, 574. However, the question is whether Scranton was an additional insured. In support of its contention, plaintiff places emphasis upon Pleasant Valley Lima Bean Growers and Warehouse Association vs. Cal-Farm Insurance Company, 142 Cal. App.2nd 126, 298 P.2d 109, as representing "the weight of authority and the better rule". The Court has carefully considered this case, and there appears to be one factual difference that is not only substantial but, in this Court's opinion, decisive, and necessarily leads to a different conclusion.

In Pleasant Valley, Brucker was the named insured. Nungaray was Brucker's employe and driver of Brucker's truck which was scheduled in Brucker's insurance policy with Cal-Farm Insurance Company. Nungaray drove the truck, loaded with lima beans, to Pleasant Valley's (plaintiff's) warehouse in order to unload the beans at plaintiff's warehouse pits. Nungaray drove the truck to the rear of the warehouse where he was directed by Croker, plaintiff's employe. Prior to this, Croker had placed certain wooden blocks in position to assist in the unloading operations. Croker actively participated in the unloading, operating certain machinery inside the door of the warehouse, etc. As the unloading neared completion, the rear dual wheels of the truck moved up and over the wooden blocks placed by Croker, permitting the truck to roll back and over the platform, causing severe injuries to Nungaray. Nungaray brought an action for damages in state court, naming as defendants Pleasant Valley and its employe, Croker. Nungaray's cause of action was based upon the proposition that the defendants were negligent in constructing and placing the wooden blocks, in failing to remove them prior to the unloading operation, and in failing to warn Nungaray that the blocks were likely to cause the truck to back up when in an elevated position. In considering whether Pleasant Valley was an additional insured under the "omnibus clause" the court stated (p. 112):

> "The 'omnibus clause' in Brucker's policy with defendant extended protection to 'any person while using the automobile and any person or organization legally responsible for the use thereof,' provided that such use was by Brucker himself or with Brucker's permission. The policy defined 'use' of Brucker's truck to include loading and unloading. It is a reasonable inference that Croker had Brucker's consent to carry out the operations incidental to unloading the lima beans from the truck, and it is obvious that the unloading operation constituted a use of the truck within the policy provision. Pleasant Valley, Croker's employer, is liable under the doctrine of respondeat superior for Croker's negligent acts committed within the scope of his employment, hence plaintiff is clearly, with respect to the truck, an organization 'responsible for the use thereof.' "

It is clear that the Court concluded that, at the time involved, Croker was using the vehicle with Brucker's consent, and Croker's employer, Pleasant Valley, was legally responsible for using the same and that such use was within the policy provisions.

In the case before this Court it clearly appears that Scranton was not using the vehicle at the time involved, and that its then use was by Tatro only, driver of

the named insured, and the latter's employer, Austad.

The Court in Pepsi-Cola Bottling Co. of Charleston v. Indemnity Insurance Company of North America, 1963, 4 Cir., 318 F.2d 714, commented squarely on this point. Lipscomb, decedent, was an employee of Elk Refining Company. Indemnity had issued a comprehensive automobile liability policy upon Elk's trucks. Lipscomb, in delivering an order of gasoline, drove Elk's truck to the vehicle entrance of the Pepsi-Cola building. In preparing to unload the gasoline Lipscomb followed instructions of Pepsi representatives, who actively assisted Lipscomb. During the unloading operations gasoline ignited and Lipscomb died from injuries received. In Elk's policy with Indemnity, the provisions as to definition of insured and definition of purposes of use were similar to those in the instant case. The Court commented upon the contention of Pepsi (and its insurer, Travelers) that the death claim arose in the unloading of the truck, that Pepsi was taking part in the undertaking with the consent of Elk's representative, and hence became an additional insured under the policy's "Definition of Insured" clause, as follows: (p. 715)

> "We too think the circumstances furnish ground for an averment that Pepsi through its representatives, with the consent of Elk, participated in the discharge of the gasoline, and so became an insured under Indemnity's policy."

■ In the Court's opinion, as Scranton was not using the vehicle at the time involved, it was not an "additional insured" under Tri-State's policy, and Tri-State owes no obligation to defend in the Tatro action.

Notwithstanding the dispositive effect of the foregoing, the Court deems it advisable to express an opinion as to the remaining contentions of the respective parties. In the event of an appeal herein, and should the Court of Appeals disagree with the foregoing, in all likelihood the trial court and also the Court of Appeals would be required to consider such remaining contentions in a subsequent action if they remain, at this point, undecided.

■ Tri-State contends that even if it be determined that Scranton is an additional insured, specific policy provisions exclude liability under the circumstances present in this case. Those policy provisions are as follows:

1. Under III. Definition of Insured. "The insurance with respect to any person other than the named insured does not apply (c) to any person with respect to bodily injury to or death of *any other person who is an insured*", and

2. Under "Exclusions": "This policy does not apply (h) under coverage A, to injury to, or death of *any insured* under this policy". (Emphasis added.)

With these contentions the Court agrees. Tatro was an insured under the policy of Tri-State. The words used in the policy and above quoted are clear, specific, and unambiguous.

The Court recognizes the difficulties encountered in the construction of the clauses considered here in public liability insurance policies, and the various factual situations which are the basis of declaratory judgment litigation requiring such construction with reference thereto. Substantial, reputable and able authority supports both views. A large number of cases supporting each of the opposing views are cited or referred to in American Fidelity & Casualty Company, Inc. v. St. Paul-Mercury Indemnity Company, 1957, 5 Cir., 248 F.2d 509. For additional citations, see: Pepsi-Cola Bottling Co., supra. In these cases the arguments and reasoning are so well stated that further comment by this Court would be superfluous. The reasoning and conclusions of the court in American Fidelity & Casualty Company, Inc., supra, appeal to this Court as persuasive and sound.

In my opinion an interpretation of the policy here under consideration so as to hold that by its provisions it extends to and covers Scranton for the death of

Tatro from injuries received by him while in the course of his employment for Austad (and in the performance of which there was no participation by Scranton or any representative thereof), which injuries were allegedly proximately caused solely by the negligence of Scranton in the maintenance of its property, would be unreasonable.

For the reasons stated this Court declares that plaintiff herein has no coverage under said policy of insurance and that the defendant Tri-State has no obligation to defend the defendant in the Tatro action now pending in the District Court of Bowman County, Sixth Judicial District, State of North Dakota.

Counsel for the Defendant will prepare and submit judgment in accordance herewith.