Joseph **NELSON** and **Robert** Minor Smith

v.

**VICTORY ELECTRIC WORKS, INC.**

**Civ. A. No. 13716.**

United States District Court
D. Maryland.

Oct. 31, 1962.

Philip J. Lesser, I. Irwin Bolotin, Washington, D. C., for plaintiffs.

John J. Pyne and John A. Beck, Bethesda, Md., for defendant.

NORTHROP, District Judge.

The question raised by the defendant's motion to dismiss is whether or not venue is proper. The action is based solely upon diversity of citizenship between the parties, and it is not disputed that both plaintiffs are citizens of the District of Columbia and that the defendant is incorporated under the laws of Louisiana.

The complaint alleges that at all times material herein the plaintiffs were employed by the defendant corporation and were members in good standing of the Carpenters' District Council of the United Brotherhood of Carpenters and Joiners of America. On June 25, 1959, this Union, as bargaining representative of the unit of which the plaintiffs were a part, entered into an agreement with the defendant. This agreement provided that the defendant would "carry an excess compensation policy on his employees when they are working outside of the District of Columbia which shall give the employees, represented by the Carpenters' District Council, additional compensation in Maryland and Virginia equal to that of the District of Columbia". The contract was agreed upon in the State of Maryland.

During the period between February 26, 1959, and August 21, 1961, the defendant entered into contracts for the performance of work by it at Andrews Air Force Base in Maryland. Both of the plaintiffs were assigned by their employer to assist in the prosecution of these contracts at the job site; both sustained accidental injuries in Maryland during the course of this employment; and both received awards of compensation benefits from the Workmen's Compensation Commission of this State. It is alleged that neither employee has received from his employer, pursuant to the terms of the Union contract, additional sums to equalize the Maryland awards with those which would have been given by the District of Columbia Commission had the accidents occurred within its jurisdiction rather than within the jurisdiction of the Maryland Commission. This action is brought to recover these additional sums which, in the case of each plaintiff, exceed the jurisdictional amount.

The defendant corporation is not incorporated under the laws of Maryland. It never has received a license to do business in Maryland. It never has registered to do business in Maryland. It never has had a resident agent in Maryland. Finally, it had completed performance under its contracts at Andrews Air Force Base by December 31, 1961, and has not done business in Maryland since that time. The instant suit was not filed until April 4, 1962, a little more than three months after the defendant foreign corporation had ceased doing business in this district.

The defendant does not dispute the fact that this court has both diversity and *in personam* jurisdiction over it, for, under Maryland law the defendant concedes that service of process was valid. Annotated Code of Maryland, Art. 23, §§ 89, 92(c), 96(d) and 97 (1957 ed.); Edgewater Realty Co. v. Tennessee Coal, Iron, and R. Co., 49 F.Supp. 807 (D.Md.1943). The defendant corporation also concedes the constitutional validity of these statutes and that the corporation has "certain minimum contacts with * * * (Maryland, so) that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945). The defendant is attacking venue only.

The apposite portions of the federal venue statute, 28 U.S.C.A. § 1391, provide as follows:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may * * * be brought only in the judicial district where all plaintiffs or all defendants reside.

* * * * * *

"(c) A corporation may be sued in any judicial district in which it is in-

corporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The defendant argues that the "doing business" clause means that a corporation that does not satisfy either the incorporation or license standards of subsection (c)—as, admittedly, the defendant does not—must be doing business within the judicial district in which suit is brought at the time at which suit is brought. This being so, the defendant continues, proper venue is absent here, because neither plaintiff is a resident of this district and the defendant had ceased doing business within this district before the filing of suit on April 4, 1962.

The defendant's contention that the controlling time to which the "doing business" clause refers is the time of filing suit, is based upon analogies to citizenship determinations in diversity actions. However, in a case identical to this in every material respect, L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md.1962), Chief Judge Thomsen of this court reached the conclusion that—

> " * * * the purpose of Congress in enacting sec. 1391(c) can be fully achieved only if foreign corporations—both those which qualify to do business and those which do not qualify—can be sued in the federal court in actions arising out of business done in the state and district where the suit is filed. I believe Congress intended that the venue requirements of sec. 1391(c) may be satisfied by showing that the defendant was doing business in the district at the time the cause of action arose, and that the cause of action arose out of that business. Those facts are alleged in the complaint in this case, and are not disputed. The motion to dismiss, therefore, must be denied."

In the L'Heureux case, the motion to dismiss was also dismissed on a second ground: waiver. The opinion there states—

> " * * * that if a corporation was licensed to do business in a state at the time the cause of action arose, and if the cause of action arose out of the business done in that state and in the district in which the action is brought, the corporation should be held to have waived the right to rely on the defense of improper venue. There are strong arguments in favor of applying the same rule to a foreign corporation which is doing business in a state in defiance of its licensing laws, especially where those laws provide that if a foreign corporation required by statute to have a resident agent does not have a resident agent, such corporation shall be conclusively presumed to have designated a specific state officer or agency as its true and lawful attorney authorized to accept service."

This conclusion follows a cogent discussion of the doctrine enunciated in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), the extent to which it was enlarged upon by the Fourth Circuit in Knott Corp. v. Furman, 4 Cir., 163 F.2d 199 (1947), and the effect upon this latter decision by the more recent case of Olberding v. Illinois Central Ry. Co., 6 Cir., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953).

■■ We agree with the reasoning and conclusions expressed in the L'Heureux case. However, we believe a somewhat more extreme construction of section 1391(c) is warranted. In cases such as the instant one, arising out of a foreign corporation's business in the state and district in which suit is filed, such foreign corporation should be deemed to be "doing business" within the meaning of section 1391(c), if the corporation is amenable to service of process under the appropriate state statutes and if the minimal constitutional standards of the International Shoe case, supra, are met. This construction of the "doing business"

clause was implicit in the decision of this court (per Watkins, D.J.) in Wanamaker v. Lewis, D.C., 153 F.Supp. 195 (1957), and its reasonableness seems obvious. "If it is not unfair to subject the corporation to the court's jurisdiction by service of process, it seems wise and not unfair to hold that there is a proper venue, particularly when the case can be transferred to another venue, if convenience warrants." 1 Moore's Federal Practice, Par. 0.142(5.-3), p. 1501 (2nd ed.1961). Admittedly, this holding in the case of foreign corporations, goes a long way toward making the standards regarding venue coincident with those regarding *in personam* jurisdiction. Yet, Congress in exacting section 1391(c) clearly was striving toward this very end.

There is still another reason why the defendant's motion must be denied in the instant case. As is so often stated, venue, unlike jurisdiction, is a privilege personal to each individual litigant, which privilege can be waived and is waived by him unless a timely objection is interposed. It is explicitly provided by 28 U.S.C.A. § 1406(b):

"Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to venue."

Under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., a motion to dismiss raising objections to venue must be filed within twenty days after service of the complaint. Failure to so file such objections constitutes a waiver of them. Rule 12(h), F.R.Civ.P. In this case service was completed on April 4, 1962, the same day on which the complaint was filed with the court, but the defendant's motion was not filed until May 1st. This belated filing of the motion, unexcused by a stipulation between the parties extending the defendant's time, is fatal, and the defendant must be deemed to have waived his venue privileges.

For the foregoing reasons the defendant's motion to dismiss has been denied.