**DIXIE CARRIERS, INC.,**
and
**Offshore Towing Company**
v.
**NATIONAL MARITIME UNION OF AMERICA, AFL–CIO, United Marine Division, National Maritime Union, Local No. 333, AFL–CIO, United Marine Division, National Maritime Union, Local No. 340, AFL–CIO.**

C. A. No. 14294.

United States District Court
S. D. Texas,
Houston Division.
June 10, 1964.

Fulbright, Crooker, Freeman, Bates & Jaworski, Olan B. Lowre, Houston, Tex., for plaintiffs.

Dixie & Schulman, Chris Dixie, Houston, Tex., for defendants United Marine Division, National Maritime Union, Local No. 333, AFL-CIO; and United Marine Division, National Maritime Union, Local No. 340, AFL-CIO.

Mandell & Wright, Arthur Mandell, Houston, Tex., for defendant National Maritime Union of America, AFL-CIO.

NOEL, District Judge.

This case is before the Court (a) upon the motion of defendant United Marine Division, National Maritime Union, Local No. 333, AFL-CIO, hereinafter called Local 333, to dismiss as to it for improper venue, and (b) upon the motion of defendant United Marine Division, National Maritime Union, Local No. 340, AFL-CIO, hereinafter called Local 340, to dismiss as to it for failure to state a cause of action against it on the ground that it was not in existence at the time the cause of action sued upon arose. Suit was brought pursuant to 29 U.S.C.A. § 187 against Locals 333 and 340 and a third unincorporated labor organization, National Maritime Union of America, AFL-CIO, for damages caused by alleged unlawful secondary boycott activity.

In 1959, employees of Sabine Transportation Company, Inc., which later became Sabine Transportation and Towing Company, Inc., hereinafter called Sabine, joined Local 333 and petitioned through it for certification by the National Labor Relations Board. An election was held. Local 333 won and was certified.

After collective bargaining failed to develop a contract between Sabine and Local 333, Sabine's employees engaged in a strike. This strike resulted in the alleged unlawful boycott activity made the basis of this suit. Plaintiffs Dixie Carriers, Inc. and Offshore Towing Company allege that beginning May 1, 1960, Local 333, with the assistance of defendant National Maritime Union of America, AFL-CIO, picketed them, although the Local had no labor dispute with them. On May 19, 1961, the National Labor Relations Board held in 131 N.L.R.B. No. 91 that such picketing constituted unlawful secondary boycott activity in violation of 29 U.S.C.A. § 158(b) (4) (i) (ii) (B). Subsequently, the Board included the newly created Local 340 within the scope of its decision.

Plaintiffs seek here to recover damages allegedly suffered by them as a result of the unlawful activity. Local 340, although not in existence at the time of such activity, was made a defendant on the ground that it was the same entity as or a successor to Local 333.

The Court must first consider the motion of Local 340 to dismiss, for if it be determined to be the same entity as Local 333, then Local 333 would have been representing employees in this judicial district at the time suit was filed, with the concomitant result that venue as to it would properly lie in this district.

■■ The motion of Local 340 to dismiss for failure to state a cause of action against it requires the resolution of a fact issue, namely, whether the existence of Local 340 is distinct from that of Local 333. This motion might properly have been designated one for summary judgment. Normally, such resolution of questions of fact should be made at the trial-in-chief; however, this case is unusual in that the resolution of the fact issue determinative of the motion of Local 340 to dismiss must be made in order to test the propriety of venue over Local 333. Consequently, this case being nonjury, an oral hearing was held on November 9,

1962, and on the basis of the testimony and evidence adduced at that time and the affidavits and pleadings on file, I make my determination of this fact issue.

The cause of action asserted here occurred between May 1, and May 23, 1960. Local 340 was not chartered until January 1, 1961. Therefore, the plaintiffs' complaint would fail to state a cause of action against Local 340 unless this Local be the same as or a successor to Local 333.

Local 333 represented employees from Portland, Maine, to Corpus Christi, Texas. In 1959, employees of Sabine joined this Local and it became their certified bargaining agent. The strike giving rise to the present alleged cause of action began on April 25, 1960, and was settled May 28, 1960 by the execution of a contract between the Local and Sabine.

Local 333 had at the time of the strike and still has its principal office in New York City. Its elected officers resided and spent most of their time there. During 1960, dissatisfaction developed among the 181 members of the Local in the Texas Gulf Coast area over belonging to a local union whose principal office was located and whose policies were determined so far away. Because of this dissatisfaction one Mitchel Horne requested from the United Marine Division, the parent union of Local 333, a charter for a separate local union. The charter was granted on January 1, 1961, and the Texas Gulf Coast area members of Local 333 joined Local 340. Subsequent to January 1, 1961 Local 333 had no members, representatives or office in this area.

In the spring of 1961, when the contract between Sabine and Local 333 expired, an independent union petitioned for certification at Sabine. An election was held in which only the independent union and Local 333 were on the ballot. Local 333 won and was again certified by the National Labor Relations Board. Immediately following the election, Sabine was formally advised by the officers of Local 333 that the Local had withdrawn from participation in the Texas Gulf Coast area and that former members in this area had joined Local 340. Thereafter, a new contract was executed between Sabine and Local 340. Local 340 has one other collective bargaining contract with a company whose employees were formerly represented by Local 333. In addition, it has contracts with two other companies.

No officer of Local 340 was previously an officer of Local 333, except for Mitchel Horne, now president of Local 340, who was office manager at Port Arthur for Local 333. This position, however, was an appointed, not an elected, one. The present officers of Local 333 all reside in New York.

Although Local 340 occupies the union hall previously occupied by Local 333, it is, as was Local 333, merely a tenant and pays rent to the National Maritime Union, AFL-CIO. Local 340 does not represent the same employees as Local 333. It consists of 300 members covered by four collective bargaining contracts; whereas, Local 333 has 6,000 members covered by 200 contracts with companies operating principally in New York but also covering the eastern seaboard from Portland, Maine, to Key West, Florida.

On the basis of these facts, I hold that Local 340 is an entity distinct from Local 333 and, also, is not its successor. The chartering of Local 340 and the fact that its membership consists of some former members of Local 333 who participated in the herein-complained-of secondary boycott activity do not relieve the still-existing Local 333 from any possible liability for the cause of action asserted in this suit. Any argument that a portion of Local 333 merely changed its name in order to evade civil responsibility for this cause is therefore of no persuasion whatever.

A union itself, and not its individual members, must respond for un-

ion wrongs.[1] To place liability on Local 340 for the wrongful acts of Local 333 simply because it contains former members of Local 333 would be akin to holding the members themselves responsible. Local 333 committed the alleged wrongs; it is still in existence, susceptible to liability, and has been sued. Local 340, an entity distinct from and not the successor of Local 333, was not in existence at the time of the occurrence of the cause of action alleged against it. Therefore, the motion of defendant Local 340 to dismiss as to it is granted.

■ Having determined that Local 340 is distinct from and not the successor of Local 333, the motion of Local 333 to dismiss for improper venue becomes ripe for consideration. But first the Court will dispose of the contention of Local 333 that jurisdiction over it obtained by service through the Texas extraterritorial service statute, Article 2031b, Vernon's Ann.Civ.St., is improper on the ground that the sole manner of service on labor organizations in unlawful secondary boycott activity cases is provided by 29 U.S.C.A. § 185(d).[2] This statute is silent as to the manner of service in a situation such as here, where the labor organization, after committing an alleged wrong in a state, removes itself from the state. In such a situation, I hold that Article 2031b may be used to supplement 29 U.S.C.A. § 185(d).[3]

■ Local 333 has had sufficient minimum contacts with Texas that jurisdiction over it obtained by service through Article 2031b would not offend "traditional notions of fair play and substantial justice." [4]

Therefore, this Court does have jurisdiction over Local 333, but venue is yet another matter.

■ The venue statute applicable here is 29 U.S.C.A. § 185(c) which provides that

"For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."

The term "jurisdiction" as used in the statute obviously means venue.[5]

The principal office of Local 333 is located in New York City, within the Southern District of New York. Therefore, venue is proper in the Southern District of Texas only if the duly authorized officers or agents of Local 333 "are engaged in representing or acting for employee members" here. They were so engaged at the time the alleged cause of action accrued; however, as previously found by the Court, they stopped their representation in this District at least by the spring of 1961. The present suit was not filed until May 1, 1962.

Plaintiffs contend that 29 U.S.C.A. § 185(c) only requires that officers or agents of a defendant union represent employee members in the judicial district at the time the cause of action accrued; whereas, Local 333 maintains that it requires such representation at the time suit is filed.

---

1. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

2. 29 U.S.C.A. § 185(d) provides that "The service of summons * * * upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization."

3. See Rule 4(e), Fed.Rules Civ.Procedure.

4. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (3d Cir. 1956).

5. See International Ass'n of Machinists v. Smiley, 76 F.Supp. 800 (E.D.Pa.1948).

The plain meaning of 29 U.S.C.A. § 185(c), worded as it is in the present tense, supports the position of Local 333. However, in interpreting the general corporate venue statute, 28 U.S.C.A. § 1391 (c) [6] two recent district court cases [7] have held that venue is proper if a defendant corporation was doing business in the district at the time the cause of action arose, even though not doing business there at the time suit was brought.

If Congress had intended such a venue rule to apply in § 1391(c) and also in 29 U.S.C.A. § 185(c) situations, it would have specifically so stated. Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511, supports my conclusion, for it held that the venue requirements of § 1391(c) and of 15 U.S. C.A. § 22,[8] the antitrust venue statute, had to exist at the same time suit was filed. This conclusion was also reached in Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F.Supp. 936 (N.D. Ill.1962); Gem Corrugated Box Corp. v. Mead Corp., 189 F.Supp. 584 (S.D.N.Y. 1960); Abrams v. Bendix Home Appliances, 96 F.Supp. 3 (S.D.N.Y.1951); and 1 Moore's Fed.Practice 1494. I follow this line of authorities and hold that the venue requirements of 29 U.S.C.A. § 185(c) must exist at the time of filing of suit for venue to be proper.

My holding is supported to some extent by Kenin v. Warner Bros. Pictures, Inc., 188 F.Supp. 690 (S.D.N.Y.1960), which interpreted the words "representing employees" as used in 29 U.S.C.A. § 185(a) [9] to mean "employee members whom the labor organization now represents." [10]

Venue, however, may be waived by a defendant. A waiver was found in the Sunbury Wire Rope Mfg. Co. case where a registered foreign corporation, doing business in a district at the time of the alleged wrongs, had discontinued doing business there before suit was instituted against it. Before withdrawing its registration, it filed, as required by state statute as a condition of withdrawal, a document consenting that process against it for any cause of action arising in the state before its withdrawal may be served upon the Secretary of State after its withdrawal. The Court held that the filing of such a document constituted an actual consent to be sued and a waiver of

---

6. This statute provides that
 "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."
 The instant venue statute dealing with labor unions is similar to 28 U.S.C.A. § 1391(c), for the "representing or acting for employee members" in a district by the duly authorized officers or agents of a union is tantamount to "doing business" in that district by a union.

7. Nelson v. Victory Electric Works, Inc., 210 F.Supp. 954 (D.Md.1962); L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md. 1962). See also, Ross-Bart Port Theatre v. Eagle Lion Films, 140 F.Supp. 401 (E.D.Va.1954), interpreting the antitrust venue statute in the same manner.

8. 15 U.S.C.A. § 22 provides that
 "Any suit * * * under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business * * *."

9. 29 U.S.C.A. § 185(a) provides that
 "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties * * *."

10. The Court in the Kenin case dismissed a complaint filed by a union, which on July 22, 1958, had been superseded by another union as duly certified bargaining representative, seeking a preliminary injunction for breach by defendant employer of a provision of an expired collective bargaining agreement allegedly requiring the employer to negotiate with plaintiff union in perpetuity concerning terms and conditions by which the union might give its written consent to the employer's use on television of the music sound track for theatrical movies produced before February 19, 1958.

federal venue rights under the precepts of Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939).

If Local 333 were a corporation previously licensed to do business in Texas, the Sunbury result would be reached here, for Article 8.14, subd. A of the Texas Business Corporation Act, V.A. T.S. requires a withdrawing foreign corporation to file an application consenting to service of process by service upon the Secretary of State for any cause of action against it arising out of business done by it in the state. Although there is no analogous statute in Texas for withdrawing labor unions, Article 2031b, § 6 does provide that

"When any corporation, association, joint stock company, partnership or natural person becomes a non-resident of Texas * * * after a cause of action shall arise in this State, but prior to the time the cause of action is matured by suit * * * when * * * [it] is not required to appoint a service agent in this State, * * * [it] may be served with citation by serving a copy of the process upon the Secretary of State of Texas * * *."

██ Whether the operation of this statute is sufficient to constitute a waiver of federal venue by defendant Local 333 on a federal cause of action [11] is a "horse soon curried" by this Court.

Article 2031b, § 6 does not require a defendant to appoint an agent for process or to take any action actually consenting to such an appointment. It merely provides that when not required to appoint a service agent, a defendant may be served with process by serving the Secretary of State. It does not therefore even speak of consent to be sued.

Some light is shed on the problem here by cases [12] holding no waiver of venue in a situation where a foreign corporation is actually doing business in a state and is required to appoint a process agent but has failed to do so. These cases reason that Neirbo requires some act of actual consent which is not satisfied when a corporation doing business in a state fails to appoint an agent, even though its failure violates a state law.

The Fifth Circuit has decided two cases bearing on this problem. Knobloch v. M. W. Kellogg Co., 154 F.2d 45 (1946), held that improper venue in Texas was not waived by a foreign corporation on a cause of action arising outside the state. Although resting its decision on the fact that the cause of action accrued outside of Texas, the Court went further. After indicating that the record was unclear whether the corporation had actually appointed an agent for process, it stated "The result is the same [that venue was not waived] if we do not assume that the defendants had complied with the Texas statute and thereby consented to be sued in the district of the forum." [13]

11. Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447 (1939), expanded the Neirbo doctrine to include suits which, in addition to being brought in a federal court, assert a cause of action created by federal rather than state law.

12. Moss v. Atlantic Coast Line R. Co., 149 F.2d 701 (2d Cir. 1945); Robinson v. Coos Bay Pulp Corp., 147 F.2d 512 (3d Cir. 1945); Cummer-Graham Co. v. Straight Side Basket Corp., 136 F.2d 828 (9th Cir. 1943); Donahue v. M. A. Henry Co., 78 F.Supp. 91 (S.D.N.Y. 1948). Contra: Knott Corp. v. Furman, 163 F.2d 199 (4th Cir. 1947). Cf. Nel-

son v. Victory Elec. Works, Inc., 210 F. Supp. 954 (D.Md.1962); L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md.1962).

13. Footnote 6 of the opinion cites as authority for this proposition Moss v. Atlantic Coast Line R. Co., 149 F.2d 701 (2d Cir. 1945), which holds that venue is not waived by a corporation when it fails, in violation of state law, to appoint a process agent. The Knobloch case has been cited several times as standing for the same proposition as the Moss case. See footnote 2 in L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (D.Md.1962), and foot-

. The other Fifth Circuit case, Smith v. Hydro Gas Co. of West Fla., 157 F.2d 809 (1946), involved a corporation previously licensed to do business in Alabama which had appointed an agent for process there. The cause of action sued upon arose outside of the State at a time when the corporation had ceased to do business in the State. Although holding that venue was not waived, the Court did state that

> "Having once subjected itself to the state's jurisdiction by doing business within its borders, the corporate defendant by ceasing to do business therein cannot deprive the state of jurisdiction as to a cause of action arising out of business already done therein, but as to things done by the corporation outside the state after its withdrawal, the issue before us transcends one of mere venue and becomes jurisdictional."

The basis for this statement was an Alabama statute, similar to Article 2031b, § 6, which required a withdrawing corporation to keep a process agent in the state after its withdrawal and provided that if it failed to do so, the Secretary of State would be deemed its agent. The Court may have failed to consider footnote 15 of the majority opinion in Neirbo, which stated:

> "The decisive difference between the present case and In re Keasbey & Mattison Co.,[14] supra, is that in the latter case the designation under state law which is the basis of consent had not been made." [Footnote added.]

In any event, the Smith case was decided before Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953),[15] which held that the operation of a car on the highway of a state with a nonresident motorist, substituted-service statute did not amount to a consent to be sued in a federal court in that state for an accident which occurred therein. The majority stated that a waiver of federal venue rights requires an "actual consent," such as the appointment of a process agent by Bethlehem in the Neirbo case.[16]

Therefore, under the facts of the instant case and the applicable state statute, Article 2031b, § 6, I hold that there was no "actual consent" to be sued and thus, no waiver of federal venue rights.

My holding is supported by Professor Moore where he states: [17]

> "The Olberding decision maims but does not kill Neirbo. The difference between the two cases is that in Olberding where a course of conduct results, by statutory operation, in an automatic appointment of a state official as an agent to receive service of process in any suit arising out of such conduct, the defendant is amenable to process, but there is no waiver of federal venue. On the other hand under Neirbo, where an agent upon whom process may be had is actually appointed, even though the appointment is required by statute as a condition of doing business, the defendant not only has consented to be sued in both the state and federal courts, he has waived general federal venue requirements."

Although I hold that venue over Local 333 is improper in this judicial district and that it was not waived, I deny the motion of Local 333 to dismiss but, pursuant to 28 U.S.C.A. § 1406(a), do trans-

note 16 in Remington Rand, Inc. v. Knapp-Monarch Co., 139 F.Supp. 613 (E.D.Pa.1956).

14. 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402 (1895).

15. The Fifth Circuit followed Olberding in Brown v. Pyle, 310 F.2d 95 (1962).

16. Lied Motor Car Co. v. Maxey, 208 F.2d 672 (8th Cir. 1953), held the Olberding rule applicable to corporations.

17. 1 Moore's Federal Practice 1925.

fer the cause as to Local 333 to the Southern District of New York.

Under this opinion of the Court, the cause of action asserted against National Maritime Union of America, AFL–CIO, remains in the Southern District of Texas; however, the Court would consider favorably a motion by any party under 28 U.S.C.A. § 1404(a) to transfer this third prong of the case also to the Southern District of New York, in order that the entire controversy might be heard and determined by the same court at the same time.

The Clerk will file this Memorandum Opinion and send a copy to each counsel.