**Lowell SHARP**

v.

**COMMERCIAL SOLVENTS CORPORATION et al.**

Civ. A. No. 2-63-68.

United States District Court
N. D. Texas,
Amarillo Division.

June 16, 1964.

Witherspoon, Aikin, Thomas & Langley, Hereford, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., for defendants.

DOOLEY, District Judge.

### Statement

This is an antitrust suit, brought by the plaintiff Sharp against the defendant Commercial Solvents Corporation and Billie Sol Estes, in his proper name, as well as several more of his business names, but a bankruptcy proceeding naming said Estes, in which an order staying suits against him had been entered, was pending when the present suit was filed, and, consequently, the plaintiff was unable to do more then than merely join Estes pro forma.

The plaintiff alleges that in the spring of 1955, and for some time thereafter, he was engaged in the business of selling anhydrous ammonia, as a retailer, at Hereford and vicinity, Deaf Smith County, Texas, and that said business grew into a prosperous enterprise, whereupon about April 1, 1959, it had become a wholesale business in the anhydrous ammonia market; that his said wholesale business continued profitable and growing so much so that he was marketing anhydrous ammonia to retail dealers in various cities and towns, at Hereford and at other places in adjoining counties of that general area; that he had gone to great expense in building up said wholesale business to its prosperous and growing stage.

The plaintiff alleges that about January 1, 1959, the pro forma defendant Estes and the defendant corporation en-

tered into a conspiracy and combination to unreasonably restrain interstate trade and commerce among the several states, in violation of §§ 1 and 2 of Title 15 of the United States Code; that the substance of the terms forming the conspiracy and combination were that the defendant corporation would supply and deliver to defendant Estes whatever quantity of anhydrous ammonia needed for him to sell below cost over the general Plains region of Texas, including the area of Deaf Smith County and other counties of the territory, for the predatory purpose of ruining and stifling the economic survival of competitors, and, as a result, the plaintiff, among others, was driven out of said business, thus enabling defendants to dominate the anhydrous ammonia market to the exclusion of competitors in the foregoing localities. That the plaintiff, under such economic compulsion, sold out his business and brings this suit to recover his alleged damages. The suit was filed June 13, 1963, in the United States District Court for the Northern District of Texas, Amarillo Division, which includes Deaf Smith County and much other area in that general part of the Panhandle. The defendant corporation was duly served with proper summons and it has filed a timely motion for transfer of the suit from the Amarillo Division to the Dallas Division of the Northern District of Texas.

*The Question at Issue*

Whether the defendant is entitled to demand a transfer of venue herein from the Amarillo Division to the Dallas Division in the Northern District of Texas.

The statutory venue provisions deemed relevant by the defendant's motion to change the venue in this case, as cited by defendant in its brief, are as follows:

§ 15 of Title 15 of the United States Code, being a part of the Clayton Act. § 22 of said Title 15 to-wit:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The other provision specified by the defendant is Title 28 of the U.S.Code, § 1393(a), to-wit:

"Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides."

The plaintiff, however, invokes still another venue provision, that is, Title 28, § 1391(c), to-wit:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The position of the defendant herein that the venue of this suit, at its election, must be lifted from the Amarillo Division and instead laid in the Dallas Division of this District, where the defendant claims having an office and representatives, meets with a number of opposing contentions.

I

■ In the first place, § 1393(a) of Title 28 has two conspicuous features. One is the opening phrase "Except as otherwise provided, * * *" and then there is a diverting use of the word *"he"*. If that word, in this instance, has its ordinary meaning, it will necessarily exclude a corporation from the purview of the said section.

A look into the derivation of above § 1393(a) has located the apparent origin thereof as part of the Judicial Code of 1911, as copied in the margin.[1]

---

[1] "Sec. 51. [Civil suits; where to be brought.] Except as provided in the five succeeding sections, no person shall be arrested in one district for trial in an-

The below footnote excerpts make it rather evident that the forerunner of the present § 1393(a) in question was designed to curtail the *arrest* of a *person* in one district for trial in another in any civil action before a district court. The very context rules out any thought that a corporation, which cannot be subjected to arrest, could be a *person* within the sense of said statute. The word "he", as found in same said statute, is a wayward sort of word to rely on when used to signify a corporation. This does not mean that said section is sterile, and, on the contrary, it is quite effective in respect to personal litigants. Judge Boldt, it seems, was the first to make written comment on the "he" quirk in § 1393(a), and his work has been quite helpful herein. Guy F. Atkinson Co. v. City of Seattle, D.C., 159 F.Supp. 722.

## II

▪ In the second place, the Neirbo doctrine is deemed dispositive of the pending motion. The background requisite to that rule is fully present in this record. The defendant corporation was organized under the laws of Maryland, and prior to the events here in question, it applied for and received from the State of Texas a permit to do business in this state, a permit with statewide reach, and, as one condition thereof, it designated and has maintained an agent for receipt of service and notice to the defendant, and all the time since has been so represented in Texas. This suit rests on the anti-trust laws and incidentally there is also diversity of citizenship, and the process against the defendant was served on the aforesaid designated agent. The Neirbo case is quite explicit and its impact in the case of foreign corporations has furthered both personal jurisdiction and the attendant venue in the federal practice.

Three of the leading, among many prominent cases expounding the rule, are collected in the margin footnote.[2]

The Suttle case is quite an adaptable authority, as pointed out in Moore's FEDERAL PRACTICE, 2d Edition, Vol. 3, pages 2133–2136.

The designation of a service agent by any foreign corporation seeking a permit to transact business in Texas required that the company maintain a registered agent.[3]

The Court of Appeals for the Fifth Circuit have read the previous, but similar regulatory laws of Texas requiring foreign corporations to designate a ser-

---

other, in any civil action before a district court; and, except as provided in the six succeeding sections, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof *he* is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant. [36 Stat.L. 1101.]"

"Sec. 53. [Districts containing more than one division; where suit to be brought; transfer of criminal cases.] When a district contains more than one division, every suit not of a local nature against a single defendant must be brought in the division where *he* resides; but if there are two or more defendants residing in different divisions of the district it may be brought in either division."

2. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L. Ed. 167; Suttle v. Reich Bros. Co., 333 U.S. 163, 68 S.Ct. 587, 92 L.Ed. 614; Mississippi Publishing Co. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185.

3. *TEXAS BUSINESS CORPORATION ACT*, *Vernon's Ann.Civ.St. Art. 8.08*
   "A. Each foreign corporation authorized to transact business in this State shall have and continuously maintain in this State:
   "(1) A registered office, * * *
   "(2) A registered agent," * * *
   *Art. 8.10*
   "A. The president and all vice presidents of a foreign corporation authorized to transact business in this State and the registered agent so appointed by a foreign corporation shall be agents of such corporation upon whom any process, notice, or demand required or permitted by law to be served upon the corporation may be served."

vice agent as relating only to suits arising within the state.[4]

The sum of what has been said is that the defendant company, by compliance with the Texas legal requirements aforesaid, in obtaining its permit to do business in Texas, has waived any question of venue and is committed to abide by the venue already laid in the Amarillo Division.

■ It may be well to add that the rule imputing consent to suit on the part of a foreign corporation qualifying to do business in a state extends to federal courts in the state and is not limited in said courts to diversity of citizenship cases.[5]

It is noted, for any pertinence, that the Texas state courts try and adjudicate antitrust actions under statutes generally similar to the federal antitrust laws. Vernon's Civil Statutes of Texas, Art. 7426.

### III

■ In the third place, the plaintiff, rather than the defendant, had the priority right to the choice of forum for this lawsuit.

This point is borne out in United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584, as reflected in the composite excerpts next noted.

"The principal question, and the only one we find it necessary to consider, is whether the choice of forums given to the plaintiff by § 12 [of the Clayton Act] is subject to qualification by judicial application of the doctrine of forum non conveniens." (P. 574, 68 S.Ct. p. 1170.)

"It [§ 7] intended trial to take place in the district specified by the statute and selected by the plaintiff." (P. 582, 68 S.Ct. p. 1174.)

The premise here taken is that the plaintiff had the statutory right under the antitrust laws to make his priority selection of the Amarillo venue as the place to file and try this lawsuit. This being true in view of Title 15, § 22 of the Code.[6]

The defendant, in trying to upset the plaintiff's choice of forum, points to Title 28, § 1393(a).[7]

The decisive point of distinction, which confronts the defendant, is that the plaintiff's choice of venue relies on a specific rule of venue—that contained in the antitrust laws—and, on the other hand, the defendant's position relies only on a general venue provision, but even so, the defendant cannot claim even that much foundation, unless it is an "he", as specified in said general venue provision.

The position taken by the plaintiff here is identical with that sustained by the court in Goldlawr, Inc. v. Shubert, D.C., 169 F.Supp. 677.[8]

The only variation between that case and the case here is that in one the antitrust venue provision is § 15 and the

---

4. Knobloch v. M. W. Kellogg Co., 5 Cir., 154 F.2d 45; Stephens v. Richman & Samuels, Inc., 118 F.2d 1011.

5. Roger v. A. H. Bull & Co., Inc., 2 Cir., 170 F.2d 664; Amalgamated Ass'n of Street, Etc. Employees of America v. Southern Bus Lines, Inc., 5 Cir., 172 F.2d 946.

6. "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

7. "Except as otherwise provided, any civil action, not of a local nature, against a single defendant in a district containing more than one division must be brought in the division where he resides."

8. "After granting a cause of action under the antitrust laws to anyone injured in his business or property, 15 U.S.C.A. § 15 lays the venue in such actions in " * * * any district court of the United States in the district in which the defendant resides or is found or has an agent, * * *" We reject the defendants' contention that 28 U.S.C.A. § 1391(b), a general venue statute, applies. By its express terms § 1391(b) does not apply where a different law provides otherwise."

venue provision here is § 22, the latter being the particular corporation defendant provision.

Another antitrust case, equally parallel, is Kaeppler v. James H. Matthews & Co., 180 F.Supp. 691.[9]

The case of Ex Parte Collett, 337 U.S. 55, 59, 69 S.Ct. 944, 946, 93 L.Ed. 1207, fortifies the distinction that has been made in the above two district court cases, which have been cited with footnote excerpts, and, in respect to the distinction between general and specific provisions regulating venue, the Supreme Court comments as follows:

"Furthermore, petitioner's argument proves too much: §§ 1391–1393, which also are in the Venue Chapter and also refer to 'any civil action,' would be read as applying only to actions for which special venue requirements are established in neighboring sections of the Code, although they were obviously intended by Congress to be the general venue sections applicable to ordinary actions."

Mention has already been made herein of the special phraseology found in § 1393 (a) in that, for one thing, it begins with an excepting clause. This becomes of present interest. Moore concludes that the clause "as related to non-diversity cases refers to any special venue statute governing a particular federal type of action, as, for example, a suit for patent

infringement."[10] He could as well have named an "antitrust" suit. This goes in support of what has been elsewhere said herein to refute any application of said section to the present suit.

## IV

■ In the fourth place, there is another approach of major consequence leading to the same determination. One of the most significant changes made in the 1948 Revision of the Judicial Code is reflected in Title 28, § 1391(c), to-wit:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

The defendant had, during the time here in question, not only a statewide permit to transact business in Texas, but particularly had a manned office, facilities and working force in Deaf Smith County and was engaged there on a large money scale in shipping to and the marketing of anhydrous ammonia in said county and other localities in that vicinity, which are within the bounds of the Amarillo Division of this District. When the Estes bubble burst there was a quick slow down in the big scale operations with anhydrous ammonia, not only in the area referred to in this memorandum, but also in the other Southwestern parts of the State. The defendant, on its part, slack-

9. "The venue, in treble damage suits, fixed by the Clayton Act, 15 U.S.C.A. § 15 (formerly Section 7 of the Sherman Act), is in the district in which the defendant resides or is found, or has an agent. The same Act, 15 U.S.C.A. § 22 provides that venue in case of antitrust suits against a corporation shall be in the district whereof it is an inhabitant, or in which it is found, or transacts business. Because of the above venue provisions, a court in which a treble damage action is pending has no authority to bring in defendants who reside outside the district in which the court is held. * * *

"Counsel for plaintiffs insist, however, that the joinder as defendants of non-residents of the district is specifically authorized by § 1392(a) of the Judicial

Code [28 U.S.C.A. § 1392(a)], which provides that:

" 'Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts.' "

"The answer to this contention is that §§ 1391–1393 of the Judicial Code are general venue sections applicable to ordinary actions and have no significance where special statutes fix the venue of particular actions, such as treble damage actions under the antitrust laws, * * * and patent infringement and similar cases."

10. Moore's COMMENTARY ON THE U. S. JUDICIAL CODE. (Page 177)

ened its operations in the Hereford territory and closed its operations, facilities and business office about January 1, 1963, some six months before this suit was filed. Against the above background, it is pertinent to note a comment of the Supreme Court in the case of the United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 862, 92 L.Ed. 1091, to-wit:

> "A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due."

In the spirit of that declaration, the fact that there was an interval of several months between the time that the defendant wound up its business operations in this Division until this suit was filed should not avail the defendant to elude the application of § 1391(c). The statute should be deemed flexible enough to retain the force of it from the venue standpoint for a reasonable period of time after a defendant has committed any acts violative of the antitrust laws.

Cases directly in point on this specific question are cited below.[11]

The defendant undoubtedly would have been without any ground to challenge the Amarillo Division venue if this suit had been filed and process issued at any time while it was open and active in business during the year or more its operations continued in said Division. It would be cutting things too fine to suggest that, in spite of the defendant's said extensive and prolonged business activity there, to the alleged undoing of the plaintiff, once the defendant quit and left, the plaintiff promptly lost all recourse to said Division as a site for his suit against the defendant. Otherwise the deliverance of the Supreme Court of the United States in United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 92 L.Ed. 1091, that "A foreign corporation no longer could

come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due.", would be a rather empty declaration.

■ It would be reasonable and just that, in such an instance, a constructive continuity in the wrongful acts of the defendant should ensue for an indefinite time, to the end that the defendant still be subject to suit in the same venue that was open to plaintiff when the wrongs were committed. This points to the terms of § 1391(c), the most comprehensive general corporation venue section. It refers to corporations only, and, in doing so, uses the words "corporation" and "it", but no "he". The defendant by engaging in such business, became ipso jure a resident of the Northern District of Texas, as declared in § 1391(c). It would not, however, have become any more a resident of the Dallas Division than of the Amarillo Division of such district, even if it also had been doing business in the Dallas Division at the same time.

Now, nearing the close this Court is mindful that the Supreme Court of the United States in United States v. National City Lines, 337 U.S. 78, 69 S.Ct. 955, 93 L.Ed. 1226, held that the relief of *forum non conveniens* is authorized in antitrust suits under the provisions of Title 28, § 1404(a) of the Judicial Code and that conclusion finds further confirmation in the case of Ex Parte Collett, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207, both written by Chief Justice Vinson. That circumstance, however, does not touch this lawsuit. The defendant here has not even sought any action under the aforesaid statute governing resort to a claim of *forum non conveniens* and could not sustain any entitlement thereunder without showing that the desired change of venue would be for the convenience of

---

11. R. J. Coulter Funeral Home v. National Burial Ins. Co., D.C., 192 F.Supp. 522; Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., D.C., 140 F.Supp. 401; Nelson v. Victory Elec. Works, Inc., D. C., 210 F.Supp. 954; L'Heureux v. Central American Airways Flying Service, Inc., D.C., 209 F.Supp. 713.

parties and witnesses, and in the interest of justice. The defendant, instead, stakes its motion on Title 28, § 1393(a), which says nothing about *forum non conveniens*.

The defendant's motion for transfer of venue herein is overruled and an order accordingly will be drawn by defendant's counsel and presented promptly for the further attention of the Court.