**FARMERS ELEVATOR MUTUAL IN-SURANCE CO., a corporation, Appellant,**

v.

**CARL J. AUSTAD & SONS, INC., a Corporation; Tri-State Insurance Company, a Corporation; L. P. Gas Transport Company, a Corporation, and Martha D. Tatro, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Appellees.**

**No. 17773.**

United States Court of Appeals
Eighth Circuit.

March 18, 1965.

William R. Reichert, Dickinson, N. D., made argument for the appellant and filed brief with Frederick Saefke, Jr., Bismarck, N. D.

Patrick A. Conmy, Bismarck, N. D., made argument for appellee, Tri-State Ins. Co. and filed brief.

E. F. Engebretson, Bismarck, N. D., made argument for appellees Carl J. Austad & Sons, Inc., and L. P. Gas Transport Co. and filed brief.

Before VOGEL, MATTHES, and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

This declaratory judgment action was filed on August 19, 1963, in the United States District Court for the District of North Dakota. Farmers Elevator Mutual Insurance Co. (Farmers), an Iowa corporation, was plaintiff and is the appellant. The defendants and appellees are: Carl J. Austad & Sons, Inc. (Austad); Tri-State Insurance Company (Tri-State); L. P. Gas Transport Company (Transport) and Martha D. Tatro, individually and as Trustee for the North Dakota Workmen's Compensation Bureau.

The purpose of this action is to obtain a judicial determination of the following questions: (a) whether or not Tri-State must defend Scranton Equity Exchange

(Scranton), in the wrongful death action brought by Martha D. Tatro in the District Court of Bowman County, North Dakota; (b) whether Tri-State has the primary coverage or liability upon Scranton in such case or on an equal basis with Farmers; (c) whether if Tri-State for any reason is not primarily liable that Transport should be required to defend Scranton in such action.

Diversity of citizenship and the amount involved establishes jurisdiction of the subject matter. There arose, however, and still exists a venue question as to Transport. There is the additional contention that the Court's decision on the merits is erroneous.

Before passing to the problems presented by the appeal, we deem it desirable to designate and more fully describe all parties having any connection with this litigation or the event which caused the death of Harry Tatro, the husband of Martha D. Tatro, out of which this action arose.

Scranton, not a party, is a cooperative which owned and operated a liquified petroleum bulk storage plant in Scranton, North Dakota. Farmers had issued a liability insurance policy to Scranton which covered Scranton's bulk storage plant and was in effect when the incident occurred giving rise to the coverage question. Austad is a North Dakota corporation that was engaged in the transportation of petroleum products by motor truck. Tri-State was authorized to do business in North Dakota and was a resident of that state for venue purposes. Tri-State had issued a policy of liability insurance to Austad which covered the motor equipment used for transporting petroleum products. Harry Tatro was an employee of Austad; Martha D. Tatro, a defendant and appellee, is the widow of Harry Tatro. The complaint alleged that Transport, a Wyoming or Montana corporation, had authority from the I.C.C. to transport petroleum products in other states; leased trucks and drivers from

Austad and transported petroleum products in such leased equipment.

The operative facts, stipulated by the parties and so found by the District Court, are as follows. On June 8, 1961, a tractor and tank trailer combination unit, owned by Austad and driven by Harry Tatro, stopped at the facilities and property of Scranton for the purpose of making a delivery of propane gas. Tatro drove such unit to the unloading area of the bulk plant and hooked up the hoses used on the truck to the truck outlets and to the inlets on the pipeline system maintained by the bulk plant; Tatro was in the process of opening a valve located on top of a storage tank when an explosion occurred, the effect of which was to knock him off the tank, set him afire and inflict injuries which proved fatal. The delivery was made at approximately midnight at which time no employees, agents, or representatives of Scranton were present or participated in any manner in the subsequent unloading procedures. It was the custom under such circumstances for the driver of the truck making the delivery, to perform everything that was necessary for the unloading and later deliver the papers evidencing such unloading and the quantity unloaded to the manager of the plant, and insofar as the incident here involved is concerned, the driver was acting pursuant to such custom. Tatro's widow, Martha D. Tatro, sought and received benefits under the North Dakota Workmen's Compensation Act. Prior to the institution of the present action Martha D. Tatro, individually and as Trustee for the North Dakota Workmen's Compensation Bureau, brought the wrongful death action against Scranton for damages resulting from the death of her husband, alleging that the death of Tatro was proximately caused by the negligence of Scranton in the construction and maintenance of its storage facilities.

Farmers, while conceding that it is the liability insurer of Scranton, tendered the

---

1. Transport is designated as a Wyoming corporation in one part of the record and as a Montana corporation in another part. This uncertainty is not material.

defense of the Tatro action to Tri-State on the theory that Scranton was an additional insured under the Tri-State policy. This tender of defense was refused by Tri-State.

Early in this litigation, Transport raised the venue question. It filed a motion to dismiss, or in lieu thereof to quash the return of service of process on the ground that it had not been properly served, and that the venue was improper in that all defendants do not reside in the State of North Dakota. Two affidavits dated September 27, 1963, were filed in support of the motion—one by Transport's attorney to the effect that Transport was not doing business in North Dakota when this action was instituted; that on January 8, 1962, a plan of dissolution was approved by the stockholders of Transport and in pursuance thereof all assets for the corporation were disposed of and the transfer of the assets was completed on January 4, 1963; and since that date the corporation existed as a mere "corporate shell" and has had no officers or directors. The other affidavit by the Secretary of State of North Dakota was to the effect that Transport is not and never has been authorized or qualified to transact business in North Dakota according to the provisions of the North Dakota Business Corporation Act. Neither affidavit was controverted.

On January 27, 1964, the trial court entered an order granting Transport's motion and dismissed the complaint and action against that defendant.

On February 13, 1964, the trial court filed a memorandum opinion on the merits finding that Tri-State's policy did not provide coverage to Scranton for Tatro's death and that Tri-State is under no obligation to defend the Martha D. Tatro action. The Court's opinion is published at 238 F.Supp. 243. Appellant filed a petition for rehearing in which it complained in particular of the Court's prior action in dismissing Transport from the case. The petition was denied on April 14, 1964, following which, appellant filed a timely notice of appeal.

Appellant's first point challenges the Court's dismissal of the action against Transport. The issue brings into prominence Title 28 U.S.C.A. § 1391, the venue statute which in pertinent part provides:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside.

\* \* \* \* \* \*

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

As noted, appellant brought this action in the judicial district of North Dakota, the residence of all defendants with possible exception of Transport. The precise question is whether, for venue purposes, Transport is also a resident of that district. Concededly, Transport was not incorporated in North Dakota and according to the affidavit of the North Dakota Secretary of State had never been authorized to transact business in that state which we assume is tantamount to saying it had not been licensed to do business in North Dakota. The issue is thus narrowed to the third element of § 1391(c), that is, whether Transport was "doing business" in the district. The answer to this question depends upon the meaning of the phrase "in which it is \* \* \* doing business." Is this requirement satisfied by showing that Transport was doing business in the North Dakota District at the time when the cause of action arose, June 8, 1961, or must it be shown that Transport was doing business in North Dakota when this suit was brought on August 19, 1963?

Apparently the trial court was of the view that the controlling time which the "doing business" provision refers to is governed by citizenship determinations as in diversity actions. Thus, in its

memorandum opinion dealing with the venue issue the Court stated:

" * * * Apparently the plaintiff concedes that said defendant L. P. Gas Transport Company was not doing business in this state at the time of the commencement of this action, but contends that it was so doing at the time the cause of action arose. A decision as to which date is the critical one for this purpose, therefore, should determine the motion. The law has been specifically stated by the Court of Appeals for the Eighth Judicial Circuit. ' * * * diversity of citizenship must exist not as of the time the cause of action arises, but as of the time the suit is instituted * * *.' Russell v. New Amsterdam Casualty Company and Consumers Public Power District, 8 Cir., January 6, 1964 [325 F.2d 996]. See also Jansen v. Goos, 8 Cir., 302 F.2d 421 (1962)."

■ To be sure, the citizenship of the parties at the time of the institution of the action, is controlling in determining whether federal diversity jurisdiction exists. However, *jurisdiction of the subject matter*—the power and authority of the Court to act, 14 Am.Jur. Courts, § 160; 21 C.J.S. Courts § 15, is not equivalent in meaning to Venue, the place where the power to adjudicate is to be exercised, the place where the suit may be or should be heard, 56 Am.Jur. Venue, § 2; 92 C.J.S. Venue § 1. The terms "jurisdiction" and "venue" should not be confused, "for jurisdiction may not be conferred by consent or waiver upon a court which otherwise would have no jurisdiction of the subject matter of an action; but the venue of an action as fixed by statute may be changed by the consent of the parties and an objection that the plaintiff brought his suit in the wrong county may be waived by the failure of the defendant to make a timely objection.; in either such case the court

may render a valid judgment." 56 Am. Jur. Venue, § 2. Because of these fundamental differences, the tests to be applied in determining whether there is jurisdiction of the subject matter do not necessarily control the resolution of venue questions.

There seems to be a dearth of authority on the precise problem and our research indicates it may be a question of first impression in this circuit. Additionally, the courts that have spoken are not in full accord. Barron and Holtzoff, Vol. I, Sec. 80, Venue, 1964 Pocket Part, states: "It is not settled whether the relevant time for determining if the corporation was doing business in the state is the date when the claim arose or the date when suit was brought." In Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511 (3 Cir. 1956) the Court stated in effect, without fortifying reasons, that the controlling time was the commencement of the action. That case, however, turned on consent and waiver and we do not regard the Court's expression as to the *time* element of controlling importance.

■■ The United States District Court of Maryland has been confronted with the identical situation on two occasions. L'Heureux v. Central American Airways Flying Service, Inc., 209 F.Supp. 713 (Md.1962).; Nelson v. Victory Electric Works, Inc., 210 F.Supp. 954 (Md. 1962). In L'Heureux, Chief Judge Thomsen considered the venue law relating to corporate defendants as it existed before the enactment of the Judicial Code of 1948, of which 28 U.S.C.A. § 1391(c) is a part, as well as the purpose and effect of the Act. Of relevance here is Judge Thomsen's conclusion that "A principal purpose of Congress in enacting sec. 1391(c) was to remove any possible advantage with respect to venue which a corporation might obtain by failing to observe the licensing requirements of a state in which it does business." 209 F.Supp. at page 715.[2] We agree and are

---

2. The Maryland Court, Judge Northrop, reached the same conclusion in the Nel-

' son case, supra, 210 F.Supp. 954 (1962). Compare R. J. Coulter Funeral Home

likewise in accord with the view that the purpose of Congress can be fully achieved only if foreign corporations—those that qualify and those which do not—can be sued in the federal court in actions arising out of business transacted in the state and district where the suit is filed. We believe and hold that Congress intended that the venue requirements of § 1391(c) are satisfied by showing that the defendant corporation was doing business in the district at the time the cause of action arose.

The rule contended for by Transport and applied by the District Court could give to a foreign corporation which was doing business in another state without having qualified in accordance with the licensing requirements, an unfair advantage. By the expedient of retreating from and ceasing to do business in the judicial district where the cause of action arose out of business done by it, the corporation could insulate itself from litigation in that district and the aggreived party would be required, perhaps at great inconvenience, to seek redress in the judicial district where the corporation was incorporated. We therefore conclude that the District Court erred in dismissing Transport from the action.

Inasmuch as the Court ruled that August 19, 1963 (when this action was brought) is the critical date, it was not required to and did not determine whether Transport was doing business in North Dakota on June 8, 1961, when the cause of action arose which precipitated this lawsuit. The record gives strong indication that it was. Of course, even if Transport is found to be amenable to the Court's jurisdiction, the judgment on the merits may be the same. We make no intimation in that regard. Our holding simply means that the Court should determine the venue question on the basis of whether Transport was doing business in North Dakota on June 8, 1961. If it was, and if service of summons upon Transport was in compliance with the law, then there should be an adjudication of the obligations and liability of Transport in light of the issues presented.

 We also suggest by way of caveat that under Rule 12(b) Fed.R.Civ.P. 28 U.S.C.A., a motion raising objections to venue must be filed within twenty days after service of the summons and complaint. Failure to comply with this requirement constitutes a waiver of Rule 12(h) Fed.R.Civ.P.; see Nelson v. Victory Electric Works, Inc., supra, 210 F. Supp. at p. 957. The record fails to disclose the date of service upon Transport, hence we are not in a position to determine whether the objections to venue were timely.

The order dismissing Transport and the judgment on the merits are vacated and the cause is remanded with directions to proceed in accordance with our views herein expressed.

---

v. National Burial Ins. Co., 192 F.Supp. 522 (E.D.Tenn.1960) and Sharp v. Commercial Solvents Corp., 232 F.Supp. 323 (N.D.Tex.1964) and see for a general discussion of the venue statute, 1 Moore, Federal Practice, Par. 0.142 [5–3] p. 1489 et seq. (2nd Ed. 1964.)