**EASTLAND CONSTRUCTION CO., Inc.,**
Appellant,

v.

**KEASBEY AND MATTISON COMPANY,**
Appellee.

No. 20094.

United States Court of Appeals
Ninth Circuit.

March 21, 1966.

Joseph L. Alioto, Maxwell M. Blecher, San Francisco, Cal., for appellant.

Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa., Bradley M. Walls, Austin, Burns, Appell & Smith, New York City, Christopher M. Jenks, Robert A. Keller, III, Orrick, Dahlquist, Herrington & Sutcliffe, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

On June 1, 1962, an indictment was returned in the Eastern District of Pennsylvania charging the Keasbey and Mattison Company and the Johns-Manville Corporation with restraining and monopolizing commerce in asbestos-cement pipe in violation of the Sherman Act.[1] On the same day, Keasbey sold its asbestos-cement pipe business, including a plant located within the Northern District of California, and has done no business in California since.

On November 18, 1964, Eastland Construction Company, Inc., filed a treble damage action[2] against Keasbey and Johns-Manville based upon the antitrust violation alleged in the June 1, 1962, indictment. The complaint alleged that Eastland, whose principal place of business was in the Northern District of California, purchased substantial quantities of Johns-Manville asbestos-cement pipe from 1952 to the date of the filing of the complaint, and was compelled to pay substantially higher prices because of the antitrust violation alleged in the indictment.

The district court granted Keasbey's motion to dismiss the complaint for improper venue because Keasbey was not transacting business in the Northern District of California on the date the complaint was filed.

Under section 12 of the Clayton Act, 38 Stat. 736 (1914), 15 U.S.C.A. § 22,[3] an antitrust suit may be brought against a corporation in any district in which it "transacts business." The question presented is whether this phrase refers to the time when suit is filed, as the district court held, or when the cause of action ac-

---

1. 26 Stat. 209 (1890), as amended, 15 U.S. C.A. §§ 1 and 2.

2. Sec. 4 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C.A. § 15, provides, in pertinent part:
   "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained * * *."

3. Sec. 12 of the Clayton Act, 38 Stat. 736 (1914), 15 U.S.C.A. § 22, provides:
   "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any judicial district wherein it may be found *or transacts business;* and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." (Emphasis added.)

crued.[4] The decisions on this question are divided.[5]

The language of section 12 of the Clayton Act furnishes the principal argument in favor of selecting the time of filing the complaint in the private action as the crucial date. Section 12 is written in the present tense, not the past; and apparently all assume that the alternate grounds for venue (where the corporate defendant "is an inhabitant" or "may be found") refer to the date of filing. Moreover, the argument runs, in other instances Congress used explicit language in laying venue in the district where the wrongful act occurred (or the cause of action arose),[6] or in the home

---

4. Eastland contends that the critical date under § 12 is the date the government's indictment was returned. We reject this argument for the reason stated in note 11.

5. Cases holding that under § 12 of the Clayton Act the controlling facts are those existing when the action is commenced include Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511, 512–513 (3d Cir. 1956); City of Philadelphia v. Morton Salt Co., 248 F.Supp. 506, 509–510 (E.D.Pa.1965); School Dist. of Philadelphia v. Kurtz Bros., 240 F.Supp. 361, 364 (E.D.Pa. 1965); Commonwealth Edison Co. v. Federal Pac. Elec. Co., 208 F.Supp. 936, 939, 943 (N.D.Ill.1962); Schreiber v. Loew's Inc., 147 F.Supp. 319, 324 (W.D. Mich.1957); Newmark v. Abeel, CCH Trade Cases 1952 ¶ 67,268 (S.D.N.Y. 1952); see also Gem Corrugated Box Corp. v. Mead Corp., 189 F.Supp. 584, 586 (S.D.N.Y.1960); and see 2 Toulmin, Antitrust Laws 157 (1949); Note, 37 N.Y.U.L.Rev. 268, 281 n. 89 (1962). The facts existing when the cause of action accrued were held to control venue under § 12 of the Clayton Act in Sharp v. Commercial Solvents Corp., 232 F. Supp. 323, 329 (N.D.Tex.1964); R. J. Coulter Funeral Home, Inc. v. National Burial Ins. Co., 192 F.Supp. 522 (E.D. Tenn.1960); Ross-Bart Port Theatre, Inc. v. Eagle Lion Films, Inc., 140 F. Supp. 401 (E.D.Va.1954); and see Comment, 1962 Wash.U.L.Q. 262, 265.

The decisions are similarly divided on the analogous question arising under 28 U.S.C.A. § 1391(c)—the general venue statute—which reads: "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business *or is doing business*, and such judicial district shall be regarded as the residence of such corporation for venue purposes." (Emphasis added.) Some of the cases cited above, interpreting § 12 of the Clayton Act, also considered 28 U.S.C.A. § 1391(c), although the applicability of the latter to antitrust suits may be questionable. See Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L. Ed.2d 786 (1957). But cf. Fanning v. United Fruit Co., 355 F.2d 147 (4th Cir. 1966); Snyder v. Eastern Auto Distrib., Inc., 357 F.2d 552 (4th Cir. 1966). Other cases holding that the "doing business" requirement of § 1391(c) relates to the date the cause of action accrued include Farmers Elevator Mutual Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7, 11–12 (8th Cir. 1965); Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997, 1001–1002 (8th Cir. 1965); Nelson v. Victory Elec. Works, Inc., 210 F.Supp. 954 (D.Md.1962); and L'Heureux v. Central Am. Airways Flying Serv., Inc., 209 F.Supp. 713 (D.Md.1962). Sunbury Wire Rope Mfg. Co. v. United States Steel Corp., 230 F.2d 511, 513–515 (3d Cir. 1956), arrived at the same result on the basis of the waiver doctrine of Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L. Ed. 167 (1939). Cf. Houston Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963). We do not consider the applicability of the latter doctrine to the present case since appellant made no attempt to support venue on this theory before the district court.

Professor Moore (1 Moore, Federal Practice ¶ 0.142[5.–3], pp. 1493–94), and Professor Wright (1 Barron & Holtzoff, Federal Practice & Procedure, 1965 Supp. § 80, p. 204), are of the view that the date suit is filed is controlling under § 1391(c). To the same effect see Note, 8 Vill.L.Rev. 408 (1963). Cf. Dixie Carriers, Inc. v. National Maritime Union, 35 F.R.D. 365 (S.D.Tex.1964), construing § 301(c) of the Labor Management Relations Act, 29 U.S.C.A. § 185(c), and United Indus. Corp. v. Nuclear Corp., 237 F.Supp. 971, 978–980 (D.Del.1964), construing § 27 of Securities Act of 1934, 15 U.S.C.A. § 78aa.

6. The venue provision of the Federal Employers' Liability Act, 36 Stat. 291 (1910), as amended, 45 U.S.C.A. § 56, is especially pertinent. Suit may be brought in the district in which the defendant resides, "or in which the cause of action arose, or in which the defendant shall be doing business at the time

district of a favored plaintiff,[7] and Congress could as easily have done so in section 12 if this had been its intention. It may also be argued, as Professor Wright does in connection with the general venue statute (28 U.S.C.A. § 1391(c)),that "since venue is an attempt to provide for the convenience of the parties, it would seem that the status as of the commencement of the action, rather than some earlier time, should control * * *." 1 Barron & Holtzoff, Federal Practice & Procedure, 1965 Supp. § 80, p. 204.

Nevertheless, we conclude that under section 12 of the Clayton Act, venue is properly laid against a corporate defendant in any district in which the defendant was transacting business when plaintiff's cause of action accrued. We do so primarily because of the construction which the Supreme Court placed upon the legislative history of section 12 in Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); United States v. Scophony Corp., 333 U.S. 795, 68 S.Ct. 855, 92 L. Ed. 1091 (1948); and United States v. National City Lines, Inc., 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948).[8]

In all three cases the Court concluded that the purpose of Congress in laying venue in antitrust cases where a corporate defendant "transacts business" was to enable an injured person to sue for redress in his home district, rather than being forced to sue in a distant district in which a foreign corporation inflicting the injury "resides or is found," as would have been necessary under prior law [section 7 of the Sherman Act, 26 Stat. 210 (1890)]—Congress's underlying assumption being that antitrust injuries usually result from business activity of the corporate offender occurring in the victim's home district. Eastman, 273 U.S. at 372–373, 47 S.Ct. 400; Scophony, 333 U. S. at 808, 68 S.Ct. 855; National City Lines, 334 U.S. at 582 n. 17, 582–583, 587–588, 68 S.Ct. 1169.

Most of the relevant legislative history is summarized in the National City Lines opinion, 334 U.S. at 582–587, 68 S.Ct. 1169. As the Court pointed out, amendments were sought during House debate "to give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries." 334 U.S. at 583, 68 S. Ct. at 1175 [see 51 Cong.Rec. 9189–90, 9414–15, 9417, 9467 (1914).] In this connection, Congress's attention was specifically called to the problem presented by the present case. Congressman Summers proposed that there be added to the

of commencing such action." See also 6 U.S.C.A. § 10; 8 U.S.C.A. § 1329; 11 U.S.C.A. § 11(a) (1); 15 U.S.C.A. §§ 45(c), 77v(a), 78aa, 79y, 80b–14; 27 U.S.C.A. § 207; 28 U.S.C.A. §§ 1402(b), 1391(e) and (f), 1395(a), 1396; 42 U.S. C.A. § 1653(b): 45 U.S.C.A. §§ 18, 34, 56.

7. See, e. g., 5 U.S.C.A. § 1033; 8 U.S.C.A. § 1421; 15 U.S.C.A. §§ 45(c), 77i, 77v (a), 79x, 79y, 80a–42, 714b(c); 21 U.S.C.A. § 371(f); 28 U.S.C.A. §§ 1391(e), 1394, 1398, 1402(a) (2); 38 U.S.C.A. § 784; 42 U.S.C.A. § 2223; 43 U.S.C.A. § 143; 46 U.S.C.A. § 829; 49 U.S.C.A. § 1486(b); 50 U.S.C.A.App. § 9(a).

8. Cases holding that the critical time under 28 U.S.C.A. § 1391(c) is the date the cause of action accrued (note 5) rely upon Judge Thomsen's statement in L'Heureux v. Central Am. Airways Flying Serv., Inc., 209 F.Supp. 713, 715 (D.

Md.1962), that Congress's purpose in extending venue from districts in which the corporation is incorporated or "licensed to do business" to districts in which the corporation "is doing business" was to remove any advantage with respect to venue which a foreign corporation might obtain by failing to observe a state's licensing requirements. Judge Thomsen pointed out that state statutes commonly permit foreign corporations which are licensed to do business in a state to be sued after they have left the state on causes of action arising out of business done while they were in the state, and the purpose of § 1391(c) could be fully achieved only by permitting suit in federal courts on such causes of action whether or not the foreign corporation was licensed. However, the consent statute in California permits suits only as to causes of action arising out of intrastate business transactions. Calif.General Corp. Law, § 6504.

section the language "where the cause of action or any part thereof arises." In support of his amendment he said, "Suppose a corporation or individual goes into a certain locality and there inflicts an injury and then withdraws its agent from this territory. [Is] this Committee in favor of driving the man who suffered the injury to a foreign jurisdiction to get his remedy?" 51 Cong.Rec. 9607–08 (1914).

Congress did not adopt the proposed amendments. Instead, Congress added the "transacts business" language to section 12. The Supreme Court concluded that Congress intended the "place of injury" basis for venue, which was tendered in the rejected amendments, to be encompassed within the "transacts business" language which was adopted in their stead.[9]

The Supreme Court also rejected the argument that section 12 permitted the district court to deny antitrust plaintiffs the right to sue where the injury occurred by balancing plaintiffs' convenience against the convenience of the defendants. The Court pointed out that Congress

> "was not confronted with any problem of abuse by plaintiffs in selecting venue for antitrust suits; nor was it concerned with any question of providing means by which the defendants in such suits might defeat the plaintiff's choice to serve their own convenience. Congress' concern was quite the opposite. It was to provide broader and more effective relief, both substan-

tively and procedurally, for persons injured by violations of its antitrust policy.[15] Insofar as convenience in

15. The Clayton Act hardly can be regarded as a statute for the relief of corporate defendants in antitrust proceedings from either procedural or substantive abuses. See Levy, the Clayton Law—An Imperfect Supplement to the Sherman Law, 3 Va.L.Rev. 411.

bringing suit and conducting trial was involved, the purpose was to make these less inconvenient for plaintiffs * *." (National City Lines, 334 U.S. at 581, 68 S.Ct. at 1174)

This did not mean that Congress intended to give plaintiffs an arbitrary choice of any possible forum. "But neither was it willing to allow defendants to hamper or defeat effective enforcement by claiming immunity to suit in the districts where by a course of conduct they had violated the Act with the resulting outlawed consequences." 334 U.S. at 588, 68 S.Ct. at 1177.

Additional support for the conclusion that under section 12 venue is determined by a corporate defendant's business activity when the injury is inflicted rather than when suit is filed is found in the Supreme Court's remark in *Scophony* that in view of the "transacts business" language in section 12, "[a] foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." 333 U.S. at 808, 68 S.Ct. at 862.[10]

---

9. In addition to the citations to the congressional debate cited by the Court in National City Lines, 334 U.S. at 582–587, 68 S.Ct. 1169, the Court's conclusion is supported by the statement of Congressman Webb, manager of the bill in the conference committee, in explaining the effect of the language finally adopted: "we have thrown the doors of the court wide open for the first time to every man who is injured. *He can enter the court at his home and sue a man or corporation who injures him* or enter suit in the man's or corporation's home." 51 Cong. Rec. 16342 (1914). (Emphasis added.)

10. As Keasbey points out, the *Scophony* opinion "uses the present tense in measuring the corporate defendant's activities for venue purposes." But the present tense was used because *Scophony* was in fact engaged in business activities in the district when suit was filed. And it is worth noting that all of this language appears in Part II of the opinion relating to the place where service may be made (see, e. g., 333 U.S. at 810, 814, 816, 818, 68 S.Ct. 855), and not in Part I relating to the place where suit may be filed.

We conclude that the requirements of section 12 are satisfied if when the cause of action accrued the corporate defendant transacted business in the district in which suit is filed.[11]

The judgment appealed from is reversed.

11. As we have noted (note 4), Eastland contends that the crucial date should be the date upon which the government filed its indictment. Briefly, the argument is as follows. Sec. 5 of the Clayton Act, as amended, 69 Stat. 283 (1955), 15 U.S.C.A. § 16(b), tolls the running of the statute of limitations on private treble damage actions while the government proceeding is pending, for the purpose of enabling private plaintiffs to take advantage of the government antitrust suit. H.R. Rep. No. 627, 63d Cong., 2d sess., p. 14; S.Rep. No. 698, 63d Cong., 2d sess., p. 45; S. Rep. No. 619, 84th Cong., 1st sess., U.S. Code Cong. & Adm.News, pp. 2328–2334. See Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 567–568, 71 S.Ct. 408, 95 L.Ed. 534 (1951). The purpose of § 12 of the Clayton Act is to broaden the venue choice available to persons injured by violations of the antitrust laws; and, specifically, to relieve "persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." United States v. Scophony Corp., 333 U.S. 795, 808, 68 S.Ct. 855, 862 (1948). But if venue were proper only in the district where the corporate defendant transacted business on the date the complaint was filed in the private action, the injured party would be forced to file his suit at once or risk loss of the most convenient forum. This would impair the tolling provisions of § 5, which were designed to permit plaintiffs to await the outcome of the government litigation and take advantage of its results.

However, we reject Eastland's conclusion that the controlling date is the date upon which the government begins prosecution. If Congress's purpose of enabling the injured person to sue in the district where the injury occurred is to be fully realized, the critical date should be when the plaintiff was injured. If the date of the government suit controlled, a private plaintiff could not bring suit in the district of injury against a corporate defendant which ceased doing business in that district before the government suit was filed.